UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANGIE WALKER**,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>**U.S. DEPARTMENT OF AGRICULTURE RURAL DEVELOPMENT**,<br><br>　　　　　　　Defendant. | Case No. 1:24-cv-02163 (TNM) |

**MEMORANDUM OPINION**

Angie Walker used to live in an apartment complex that was federally subsidized under a U.S. Department of Agriculture ("USDA") rural housing program. Then she got evicted and filed this lawsuit alleging the eviction was discriminatory. But she sued the USDA, when her grievances run against the landlord who evicted her. In fact, all of Walker's many complaints stem from actions taken by her landlord, not the USDA. As a result, Walker cannot show her injuries are traceable to the USDA, so she lacks standing. The Court will thus dismiss her case.

**I.**

From 2006 until 2021, Walker was a tenant in a housing unit in Gold Beach, Oregon, that was subsidized by the USDA's Rural Development housing program. Am. Compl., ECF No. 13-1, at 1, 4.[1] But things changed in 2021 when she was evicted—a decision she believes was motivated by discrimination and retaliation. *Id.* According to Walker, the discrimination and retaliation first started in 2014 after she raised concerns "regarding secondhand smoke and nuisance noise." *Id.* at 3. Over the years, Walker "repeatedly informed" the USDA of

---

[1] In laying out the background, the Court recounts the facts as presented in Walker's Amended Complaint. *See Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021).

"hazardous living conditions in her apartment, including nicotine-stained walls and ceilings, persistent exposure to secondhand smoke, and a severely rusted bathroom sink that posed an ongoing safety hazard." *Id.* But Walker says the USDA ignored her concerns and "failed to enforce its no-smoking policy against other tenants, prioritizing their convenience over Plaintiff's health and safety." *Id.* at 4. As a result of this "prolonged secondhand smoke exposure," Walker and her son developed health issues. *Id.*

After her complaints, she believes that she and her son began experiencing "systemic discrimination, harassment, and retaliation at the hands of USDA and its agents throughout their tenancy from 2014 to 2021." *Id.* at 1. Walker maintains the agency "selectively enforce[ed] rules only against" her and her son. *Id.* at 4. She says it tried to evict her in 2015 but a court intervened and prevented it. *Id.* at 3. And she alleges it issued "multiple 24-hour notices to enter her apartment but failed to resolve maintenance issues." *Id.* at 5. All of this ended with Walker's eviction in 2021, leaving her and her son homeless. *Id.*

She first sued in 2024, ECF No. 1, and the USDA moved to dismiss, ECF No. 12. The Court then granted Walker leave to amend her Complaint and denied the USDA's motion as moot. ECF No. 13; Min. Order dated Jan. 6, 2025. In her Amended Complaint, Walker alleges the USDA violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*; violated her civil rights under 42 U.S.C. § 1983; and was negligent and grossly negligent. Am. Compl. at 5–7.[2] As a remedy, she requests $88.8 million "for pain and suffering, permanent disability, and

---

[2] In her opposition brief, Walker tries to add a new claim under the American with Disabilities Act. *See* Opp'n, ECF No. 16, at 1, 3. "Plaintiff, in spite of [her] *pro se* status, is not entitled to raise new claims for the first time in an opposition to a motion to dismiss." *Morris v. Carter Glob. Lee, Inc.*, 997 F. Supp. 2d 27, 42 (D.D.C. 2013).

housing insecurity" and an injunction requiring the USDA "to implement corrective measures and oversight to prevent further discrimination." *Id.* at 8.

The USDA again moves to dismiss under Rules 12(b)(1), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure. Mot. Dismiss, ECF No. 15. In response, Walker buttresses her claims with a host of exhibits in her opposition brief, including emails and complaint forms she submitted while living in the apartment. Opp'n, ECF No. 16. The Court turns now to these issues.

## II.

A plaintiff bears the burden of proving that she has standing to sue. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To do so, the plaintiff must show three elements: (1) she suffered an "injury in fact"; (2) the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) the injury is redressable by a favorable decision. *Id.* at 560–61 (cleaned up). Any "defect of standing is a defect in subject matter jurisdiction" under Rule 12(b)(1). *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).

In evaluating standing, courts "accept the well-pleaded factual allegations" in a complaint as true and "draw all reasonable inferences from those allegations in the plaintiff's favor." *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021). But "threadbare recitals of the elements of standing, supported by mere conclusory statements, do not suffice." *Id.* at 865–66 (cleaned up). And courts "do not assume the truth of legal conclusions, nor do [they] accept inferences that are unsupported by the facts set out in the complaint." *Id.* at 866 (cleaned up). All of this to say, "a complaint must contain sufficient factual matter, accepted as true, to state a claim of standing that is plausible on its face." *Id.*

"Uniquely, Rule 12(b)(1) allows a district court to make findings of fact that contradict the allegations in the complaint, at the very outset of litigation, before any discovery has taken place." *Davis v. Wells Fargo*, 824 F.3d 333, 349 n.18 (3d Cir. 2016).  So in assessing whether standing is plausible, "the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003).

Indeed, "fellow courts in this district routinely consider associated affidavits or exhibits when deciding a motion under Rule 12(b)(1)." *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 585 F. Supp. 3d 63, 70 (D.D.C. 2022), *aff'd,* 77 F.4th 679 (D.C. Cir. 2023); *see also Haase*, 835 F.2d at 907 ("To the extent the [standing] assessment turns on factual evidence, the court may consider all matters developed in the record at the time of its decision.").  Thus, "where a conclusory allegation in the complaint is contradicted by a document" in the record, "the document controls and the allegation is not accepted as true."  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011).

Walker is pro se, so the Court "liberally construe[s]" her Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Still, the special solicitude afforded to pro se litigants does not permit her "to ignore the Federal Rules of Civil Procedure." *Oviedo v. WMATA*, 948 F.3d 386, 397 (D.C. Cir. 2020).

### III.

Walker lacks standing to sue the USDA.³  Even drawing all inferences in her favor, the Court cannot discern a link between the harms she alleges and the USDA's conduct.  As best the Court can tell, the USDA's only connection to this case is that the property where Walker lived "was federally subsidized under USDA's Rural Development housing program."  Am. Compl. ¶ 7.  But when it comes to Walker's allegations, she misattributes actions taken by her landlord to the USDA.  Her own exhibits clearly show that a company called Grand Management Services managed the property where she lived and was her landlord—not the USDA.  *See* ECF No. 16-1 at 26, 28–29 (landlord-tenant documents between Grand Management and Walker). And the exhibits also show that Grand Management, not the USDA, was responsible for the disputed conduct.

Walker's Amended Complaint fails to identify a legal basis on which the agency can be liable for the actions of a private company.  And as the Plaintiff, it is her burden to establish the traceability requirement for jurisdiction.  *Lujan*, 504 U.S. at 561.  At most, Walker makes cursory reference to the USDA's Rural Development housing program.  Reading her Amended Complaint liberally, the Court construes Walker's position to be that the program somehow makes the USDA responsible for Grand Management's actions.

But caselaw cautions otherwise.  "[A]s the [Supreme] Court has long held, the fact that the government licenses, contracts with, or grants a monopoly to a private entity does not convert

---

³ The USDA does not raise standing in its motion to dismiss, but "[s]tanding can be raised at any point in a case proceeding and, as a jurisdictional matter, may be raised, *sua sponte*, by the court."  *Cierco v. Mnuchin*, 857 F.3d 407, 415 (D.C. Cir. 2017).  Indeed, "[w]here a party's Article III standing is unclear, [courts] *must* resolve the doubt, *sua sponte* if need be."  *Id.* at 415–16.  The Court thus resolves this case on standing, rather than on USDA's various theories for dismissal.

the private entity into a state actor." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 814 (2019). "The same principle applies if the government funds or subsidizes a private entity." *Id.*; *see also San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 544 (1987) ("Even extensive regulation by the government does not transform the actions of the regulated entity into those of the government.").

Indeed, the government "normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the government." *San Francisco Arts & Athletics*, 483 U.S. at 546. Walker has not pleaded any such coercion or encouragement in her Amended Complaint, nor can the Court reasonably infer it from the record. Thus, Walker has identified no legal basis to impute Grand Management's actions to the USDA. As a result, her injuries are not "fairly traceable" to the USDA and instead involve "the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (cleaned up). Reviewing the allegations in her Amended Complaint only drives this conclusion home.

Walker alleges the USDA first tried to evict her in 2015. Am. Compl. at 3. But her contemporaneous email from December 2014, which she sent to the USDA, complained about her apartment "management's adverse actions towards us, *threatening us with eviction*, falsifying evidence against us and blatantly lying." ECF No. 16-1 at 7 (emphasis added). And in another email from a month later, the USDA informed Walker that Grand Management "stated that they will not re-consider their position on your eviction notice." *Id.* at 23. In other words, the "first attempt to evict Plaintiff in 2015" came from her landlord, not the USDA. Am. Compl. at 3.

Similarly, Walker claims that the USDA successfully evicted her in 2021. Am. Compl. ¶ 15. But Grand Management was still her landlord in 2021, not the USDA. *See* ECF No. 16-1

6

at 26 ("Tenant to Landlord – Written Complaint" from Walker to Grand Management in 2021), 28 (apartment inspection notice from Grand Management in 2021). So the eviction—even if it was discriminatory or retaliatory—was not at the hands of the agency. The Court will not credit Walker's bald attribution of her eviction to the USDA when the record contradicts that claim. *See Amidax Trading Grp*, 671 F.3d at 147.

She also contends that she repeatedly "raised concerns about smoking violations" but "USDA ignored these complaints" and "failed to enforce rules against other tenants who continued smoking." Am. Compl. ¶ 12–13. And she objects to the USDA's "failure to address maintenance issues," *id.* ¶ 9, and refusal to get her "a replacement for her rusted bathroom sink." *Id.* ¶ 10. But Walker offers no reason to think that the USDA was responsible for resolving routine issues that come as standard fare for tenants in an apartment complex—or that it even had the ability to do so.

Likewise, she maintains that the "USDA failed to enforce FHA regulations." Am. Compl. ¶ 19. But this misunderstands the FHA. The USDA has no role in administering or enforcing that statute. *See* 42 U.S.C. § 3608 ("The authority and responsibility for administering this Act shall be in the Secretary of Housing and Urban Development."). It is risible to suggest that the USDA harmed her by failing to enforce a statute it has no authority to enforce.

Finally, Walker alleges the USDA "issu[ed] unjustified 24-hour notices to enter her unit" in retaliation for her repeated complaints. Am. Compl. ¶ 18. Once again, her own exhibits show that Grand Management sent her the inspection notice and conducted the inspection, not the USDA. *See* ECF No. 16-1 at 28 (24-hour inspection notice from Grand Management), 30 (email from Grand Management about the inspection).

In sum, Walker's own exhibits show that her alleged injuries are not "fairly traceable" to the USDA. *Lujan*, 504 U.S. at 560. Instead, they are "the result of the independent action of some third party not before the court." *Id.* Walker's attempt at showing standing is thus not "plausible on its face." *Kareem*, 986 F.3d at 866.

Perhaps Walker has evidence that the USDA did cause her injuries, either directly or using the landlord as its agent. But she has made no such allegations here.

## IV.

Because Walker lacks standing, the Court cannot consider her claims. For these reasons, the Court will grant the USDA's motion to dismiss her Amended Complaint without prejudice. A separate Order will issue today.

Dated: September 29, 2025                              TREVOR N. McFADDEN
                                                       United States District Judge